IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WARREN CHASE, #326-514 | : |
|    Plaintiff | : |
|       v. | :   Civil Action No. CCB-09-1523 |
| WARDEN | : |
|    Defendant | : |

**MEMORANDUM**

On June 5, 2009, plaintiff Warren Chase, presently incarcerated at the North Branch Correctional Institution in Cumberland ("NBCI"), sent a letter to the court alleging that he has been deprived of meals twenty-five times over the past year, resulting in weight loss. The letter was construed as a 42 U.S.C. § 1983 complaint seeking injunctive relief and defendant was ordered to respond to plaintiff's request for injunctive relief mandating that he be fed.[1] A response to the injunctive relief request has been construed as a dispositive motion and plaintiff has responded thereto. Paper Nos. 3 and 5. No hearing is needed to resolve the Eighth Amendment issue presented in this case. *See* Local Rule 105.6 (D. Md. 2008).

Plaintiff was put on the special management meal[2] program on July 23, 2008 to August 2, 2008; August 9, 2008 to August 14, 2008; and September 2, 2008 to September 9, 2008, due to disruptive behavior, including refusal to close his food slot and refusal to return a meal tray.[3]

---

[1] Plaintiff also requests injunctive relief wherein this court would order various corrections employees to undergo lie detector tests and criminal investigation to demonstrate that he has in fact been the target of intentional food deprivation. Paper No. 1 at 5-6. The court declines to do so.

[2] The special management meal program is a behavior modification program and consists of meals commonly referred to as "food loaf." The loaf consists of whole wheat bread, imitation cheese, carrots, spinach, raisins, Great Northern Beans, vegetable oil, tomato paste, powdered milk, and potato flakes. These ingredients are kneaded into loaves and baked. *See* DCD 110-18, Appendix 2.

[3] In the previous case, Civil Action No. CCB-08-2232, plaintiff contended he was placed on food loaf solely

Paper No. 4, Exhibits 1 and 1-A through 1-C.  In prior litigation, he contended that his placement on the meal program was unjustified, without penological purpose, and unconstitutional.  He further contended that his health was adversely affected by the diet because he is allergic to beans, and that he was unable to eat and lost weight.  The court found that plaintiff did not lose significant weight during the time he was eating the food loaf, and that when medical personnel attempted to test plaintiff to confirm the allergy, plaintiff refused testing.  *See Chase v. Warden*, Civil Action No. CCB-08-2232 (D. Md.), Memorandum of November 12, 2008.  The court finds no reason to revisit its findings with regard to plaintiff's claims of food deprivation occurring prior to its previous ruling.  It will, however, examine plaintiff's subsequent claim of food deprivation beginning in February of 2009.

>Fed. R. Civ. P. 56(c) provides that:

>>[Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

>The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

>>By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,

---

as punishment by rogue officers.  The exhibits attached to the Declaration of Dietary Supervisor Jeffrey Haggard , however, noted placement occurred due to plaintiff's misconduct.

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

It is undisputed that plaintiff has lost about twenty-two pounds over the past year.  As of February 4, 2009, he weighed 198 pounds.  Paper No. 3, Exhibit 1 at 1.  Plaintiff complains that he was forced to eat food loaf containing beans which caused him illness for which he was denied medical care, and that his meals have been "repeatedly poisoned by NBCI dietary food service kitchen helpers" who are not supervised by prison personnel.  Paper No. 5 at 3.  Medical records show that plaintiff was seen by medical staff on many occasions for complaints relating to the "poisoning" of his meals.  Although his requests to receive a dietary supplement drink ("Ensure") do not appear to have been granted, he has since October of 2008 been prescribed a daily multivitamin. Paper No. 3, Exhibit 1 at 6 and 7.  Additionally, he has been scheduled for laboratory blood work testing and has received various medications, including psychotropic medications.  *Id*, Exhibit 1 at 7.  The medical record suggests that while plaintiff avails himself of some health care, he also refuses medical attention on some occasions.  *Id*., Exhibit 1.

Nothing in the medical record suggests that plaintiff has in fact been "poisoned" by the food he receives.   It is apparent from the pleadings and exhibits in this and other cases that in addition to regular prison meals (which plaintiff finds oily and repugnant), plaintiff also receives

special management "food loaf" when deemed non-compliant with prison rules. Absent actual physical injury, placement on food loaf is not cruel and unusual punishment in violation of the Constitution. *See Adams v. Kincheloe*, 743 F. Supp. 1385, 1390-92 (E.D. Wash. 1990); *United States v. Michigan*, 680 F. Supp. 270, 274-76 (W.D. Mich. 1988). Further, while prison meals in general and special management meals in particular are doubtless "by no means a culinary delight," *Adams*, 743 F. Supp. at 1391, in the absence of any adverse health effects they are not a significant and atypical hardship.

The dispute in this case centers around whether correctional personnel are refusing to provide plaintiff food trays during regularly scheduled meals. Plaintiff claims various guards deliberately do not feed him. Prison records, including sick call slips written by plaintiff, suggest that plaintiff regularly receives his meals but sometimes refuses meals, claiming to be on a "hunger strike." Paper No. 3, Exhibit 1 at 9, 11-12.

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* 'sufficiently serious,' and that '*subjectively* the officials act[ed] with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th

Cir. 1993). Plaintiff has failed to demonstrate that prison personnel are solely responsible for his weight loss.  Even if the court were to assume that correctional employees on some occasions over the last year deliberately failed to feed plaintiff, he has failed to produce evidence of, or to forecast proof of, any injury significant enough to support a constitutional claim.[4]  While correctional personnel must provide plaintiff adequate nutritious food, the court cannot compel them to provide food more to his liking.  Consequently, defendant's response, construed as a motion for summary judgment, will be granted by separate order.


  August 5, 2009                                        _____/s/_____
Date                                                                Catherine C. Blake
                                                                    United States District Judge

---

[4] There is no indication that plaintiff's weight loss is significant: he weighs nearly 200 pounds.  To the extent that plaintiff did not feel well after eating prison meals, such illness appears at most to be de minimis.